Keely E. Duke
ISB #6044; ked@dukeevett.com
Molly E. Mitchell
ISB #10035; mem@dukeevett.com
DUKE EVETT, PLLC
1087 West River Street, Suite 300
P.O. Box 7387
Boise, Idaho 83707
Telephone (208) 342-3310
Facsimile (208) 342-3299

Scott L Davis, *pro hac pending*
HUSCH BLACKWELL LLP
1900 Pearl Street
Suite 1800
Dallas, TX 75201
Direct: 214-999-6184

Tyler J. Scott, *pro hac pending*
HUSCH BLACKWELL LLP
4801 Main Street,
Suite 1000
Kansas City, MO 64112-2551
Direct: 816-983-8274

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No.: _____ |
| MATTHEW WILSON, WILSON BOWEN TAX SERVICES, LLC, and WILSON TAX LAW GROUP, P.C., | ) ) ) ) | **COMPLAINT** |
| Defendants. | ) ) | |
| _____ | ) | |

**COMPLAINT-1**

Plaintiff Hartford Underwriters Insurance Company ("Hartford"), files this Complaint for declaratory judgment seeking a declaration of legal rights and remedies among the parties relating to a Business Owner's Policy of insurance issued by Hartford and states as follows:

## PARTIES

1.    Plaintiff Hartford is an insurance company incorporated, organized, and existing under the laws of the state of Connecticut with its principal place of business in the state of Connecticut, and it is therefore a citizen of Connecticut.

2.    Defendant Matthew Wilson ("Wilson") is an Idaho resident and therefore a citizen of Idaho.

3.    Defendant Wilson Bowen Tax Services, LLC ("Wilson Bowen") is a limited liability company organized under the laws of the state of Idaho and, based on information and belief none of its members are citizens of the state of Connecticut.

4.    Defendant Wilson Tax Law Group, PC, also known as Wilson Law Group ("Wilson Tax Law"), is a professional corporation organized under the laws of the state of California with its principal place of business in the state of California, and is therefore a citizen of California. Wilson Tax Law is registered as a foreign business entity with the Idaho Secretary of State with a registered Idaho business address of 16050 Idaho Center Blvd., Nampa, Idaho 83687 (Wilson, Wilson Bowen and Wilson Tax Law, collectively, "Defendants").

## JURISDICTION AND VENUE

5.    Jurisdiction is proper with this Court pursuant to 28 U.S.C. § 2201 as Hartford is seeking a determination of its rights and obligations with respect to all Defendants under an insurance policy issued to "Wilson Bowen Tax Services, Inc." and a controversy of a ripe and justiciable nature exists between the parties.

6.      Jurisdiction is also proper with this Court pursuant to 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

7.      Venue is appropriate in this district pursuant to 28 U.S.C. §1391(b) because Wilson Bowen has its principal place of business in this district, Wilson resides within this district, Wilson Tax Law has a registered business address in this district, and a substantial part of the events, acts, or omissions giving rise to this claim occurred in this district.

## GENERAL ALLEGATIONS

8.      The Defendants seek insurance coverage for claims filed against them by Howard Schutte, Patricia Schutte, David Schutte (collectively the "Schuttes"), Mark Bottles, Idaho Holding, LLC, and Mark Bottles Real Estate Services, LLC (collectively the "Bottles") in the District Court of the Third Judicial District, Canyon County, Idaho, Case No. CV14-21-09557 (the "Underlying Action"). Wilson and Wilson Bowen seek coverage under the Professional Liability coverage part of the Hartford Policy (as that term is defined below) which, subject to all other terms and conditions, provides coverage for "claims," i.e., as relevant here, civil pleadings against "insureds" alleging negligent acts, errors or omissions in the performance of or failure to perform "professional accounting services" by the "insured" in the ordinary conduct of its profession. However, the claims against Defendants in the Underlying Action do not allege any such acts, errors or omissions in performance of or failure to perform "professional accounting services."

9.      Because (a) the Professional Liability coverage part in the Hartford Policy does not provide coverage for such claims, (b) Wilson and Wilson Tax Law do not qualify as insureds under the Hartford Policy with respect to the Underlying Action, and (c) coverage is otherwise barred by a number of exclusions in the Hartford Policy, Hartford brings this action seeking a

declaration that it does not owe a duty to defend or a duty to indemnify the Defendants in connection with the claims filed against them in the Underlying Action.

A.       **The Hartford Policy**

10.       Hartford issued a Business Owner's Policy, policy no. 65SBAAJ9TC1, to Named Insured "Wilson Bowen Tax Services, Inc." for the period of December 27, 2020 to December 27, 2021 (the "Hartford Policy"). The Hartford Policy is attached as **Exhibit A**.

11.       The Hartford Policy contains a number of different first-party property coverages and liability coverages that are not relevant or even potentially applicable to the claims asserted in the Underlying Action.

12.       The only coverage which is even potentially applicable is the Professional Liability coverage part, which is included in the Hartford Policy pursuant to Form SL 50 45 10 18 and amended by the Professional Services Endorsement – Accountants Form SL 50 63 10 18. *See* Ex. A, p. 180-195.

13.       The Professional Liability coverage part has Limits of Insurance of $1,000,000 per "claim," and a $2,000,000 aggregate limit. *See* Ex. A. p. 31, Declarations.

14.       The Insuring Agreement for the Professional Liability coverage part provides, in part, as follows:

**SECTION I – INSURING AGREEMENT**

We will pay on behalf of the "insureds", subject to the Limits of Liability, such "damages" and "claims expenses" in excess of the applicable Deductible for "claims" first made against the "insureds" during the "policy period" or applicable Extended Reporting Period and reported in writing to us immediately, but in no event later than sixty (60) calendar days after the expiration date of the "policy period" or within any applicable Extended Reporting Period. The "damages" and "claims expenses" must arise out of a "wrongful act" or "personal injury" that occurs on or after the "retroactive date" as stated in the Coverage Part Declarations and before the end of the "policy period".

Ex. A, p. 181.

15.     "Claim" is defined, in relevant part, by the Professional Liability coverage part as "an allegation of a 'wrongful act' or 'personal injury' in conjunction with **a.** a written demand seeking monetary damages or other civil non-monetary relief against an 'insured'; [or] **b.** a civil proceeding, including an arbitration or other alternative dispute proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading against an "insured'….." Ex. A, p. 181.

16.     "Damages" is defined, in pertinent part, as "the monetary amounts that an 'insured' becomes legally liable to pay solely as a result of a 'claim' covered under this Coverage Part" and includes compensatory damages and settlements entered into with Hartford's prior written approval. "Damages" do not include, among other things, "equitable, injunctive or other non-monetary relief…."  Ex. A, p. 182.

17.     "Insured" is defined  as any (a) "insured entity," (b) "named insured," or (c) "insured person." Ex. A, p. 183.

18.     "Insured entity" is defined in pertinent part, as (a) the "named insured," (b) any "subsidiary" while it qualifies as such, or (c) any "'predecessor firm(s)' provided a request for such coverage is made to us and approved in writing by us prior to the inception of such coverage." Ex. A, p. 183.

19.     "Predecessor firm" is defined as "any firm disclosed to us which has undergone dissolution and to whose financial assets and liabilities the 'named insured' is the majority successor-in-interest." Ex. A, p. 183.

20.     "Named insured" is defined as the individuals or entities stated in the Coverage Part Declarations. Ex. A, p. 183.

21.     The "named insured" in the Hartford Policy is "Wilson Bowen Tax Services, Inc." Ex. A, p. 31, Declarations.

22.     "Insured Person" is defined, in pertinent part, as "[a]ny person who was, is now, or hereafter becomes principal, partner, officer, director, employee or principal shareholder of the 'insured entity' but only if such person was performing 'professional services' on behalf of an 'insured entity' at the time of the alleged 'wrongful act' or 'personal injury.'"

23.     As modified by Section I of the PROFESSIONAL SERVICES ENDORSEMENT – ACCOUNTANTS, form SL 50 63 10 18, "professional services" is defined as "'professional accounting services' performed by the 'insured', in the ordinary conduct of its profession, for others for a fee, remuneration or other consideration." Ex. A, p. 194.

24.     Section II of the same endorsement defines "professional accounting services" as follows:

> "Professional accounting services" means services performed or advice given by the "insured" or on the "insured's" behalf in the conduct of the "insured's" practice as:
>
> > **a.** An accounting professional, including but not limited to services performed or advice given in connection with the American Institute Of Certified Public Accountants or any state society of certified public accountants;
> >
> > **b.** A member of a formal accreditation, standards review, or other professional board or committee for the accounting profession; and
> >
> > **c.** A personal financial planner, accounting consultant, arbitrator, mediator, or notary public.
>
> "Professional accounting services" also includes training, consulting, sales, installation, integration, maintenance and development of hardware and packaged software products related to the services described in **a.**, **b.**, or **c.** above.
>
> "Professional accounting services" does not include services performed related to forensic accounting, mergers and acquisitions, Chief Financial Officer services, Controller services, business valuation, forecasting, project management services,

or securities activities. "Professional accounting services" also does not include any services not listed in **a.**, **b.**, **c.**, or the paragraph immediately following **c.**, above.

Ex. A, p. 194.

25.     "Wrongful act" is defined as "an actual or alleged negligent act, error or omission in the performance of or the failure to perform 'professional services.'" Ex. A, p. 184.

26.     Thus, for coverage to potentially apply under the Professional Liability coverage part, the "claim" must be made against an "insured" and allege a negligent act, error, or omission in the "insured's" performance of or failure to perform "professional accounting services."

27.     Additionally, the "damages" and "claims expenses" must arise out of the performance of "professional accounting services."

28.     Section IX – Exclusions of the Professional Liability coverage part includes the following relevant exclusions:

**SECTION IX – EXCLUSIONS**

We shall not pay "damages" or "claims expenses" in connection with any "claim":

\*\*\*

**6.**     for, based upon, arising from or in any way related to an "insured's" capacity as:

    **a.**     a public official or employee of a governmental body, subdivision or agency thereof unless an "insured" is deemed to be such solely by virtue of rendering "professional services" to such governmental body, the renumeration for which services benefits the "named insured"; or

    **b.**     an officer, director, partner, employee, principal shareholder or member of any organization other than yours.

\*\*\*

**10.**     for, based upon, arising from or in any way related to "professional services" performed for or on behalf of any organization if, at any time when those services were performed, the organization was or was intended to be:

    **a.**     directly or indirectly controlled, operated or managed by an "insured"; or

    **b.**    owned by an "insured", or by a spouse of any "insured", in a percentage which exceeds:

        **i.**    five (5) percent of the issued and outstanding voting stock of the shares of a publicly traded organization; or

        **ii.**    ten (10) percent of the legal and/or equitable ownership of the organization.

    \*\*\*

    **18.**    for, based upon, arising from or in any way related to the actual or alleged violation of any state or federal antitrust, restraint of trade, unfair or deceptive business practices, unfair competition or other consumer protection laws.

Ex. A, p. 187-89.

    29.    The PROFESSIONAL SERVICES ENDORSEMENT – ACCOUNTANTS, form

SL 50 63 10 18, modifies the Professional Liability coverage by adding the following relevant

exclusion:

    **III.** The **EXCLUSIONS** Section is amended to include the following:

    \*\*\*

    o    brought by any person or entity which any "insured" has sued or threatened to sue for fees relating to the same representation or subject matter which is the basis of a "claim", regardless of whether such suit for fees is pending or dismissed.

Ex. A, p. 194.

    31.    Section XI – GENERAL CONDITIONS of the Professional Liability coverage

part contains an Other Insurance Condition which provides as follows:

    **8.**    **Other Insurance**

    With respect to any "claim" reported under this Coverage Part, if there is available any other valid and collectible insurance, then this Coverage Part shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this

**COMPLAINT-8**

Policy by reference in such other policy or policies to this Policy's policy number.

Ex. A, p. 193.

**B.     The Underlying Action and Underlying Claims**

30.     On October 27, 2021, Wilson filed the Complaint in the Underlying Action against the Schuttes, the Bottles, and Does I-X.

31.     The Complaint seeks fees to which Wilson claims he is owed from the Schuttes for legal and real estate services he provided in connection with the sale of three parcels of land owned by the Schuttes (the "Property") and pursuant to a Fee Agreement between Wilson, Wilson Tax Law, and the Schuttes. *See* **Exhibit B**, Wilson Complaint, ¶ 14.

32.     The Complaint alleges that the Bottles tortiously interfered with the Fee Agreement and Wilson's payment. *Id.* at ¶ 76-95.

33.     On November 5, 2021, the Bottles filed an Answer to the Complaint and Counterclaim against Wilson in the Underlying Action (the "Bottles' Claims"), a true and correct copy of which is attached as **Exhibit C**.

34.     On November 29, 2021, the Schuttes filed an Answer to the Complaint as well as a Counterclaim against Wilson and a Third-Party Complaint against Wilson Bowen and Wilson Tax Law in the Underlying Action (the "Schuttes' Claims"), a true and correct copy of which is attached as **Exhibit D**.

35.     The Schuttes' Claims allege that the Schuttes had previously received accounting services from Ron Bowen but in 2019 Bowen introduced them to his new partner, Wilson, and Wilson Bowen began providing accounting and tax related services to the Schuttes after that. Ex. C, ¶ 8-10.

36.     The Schuttes allege that in January 2021, Mark Bottles Real Estate Services

contacted the Schuttes about selling the Property and made an offer to the Schuttes in February 2021. Ex. C, ¶ 14-15.

37.    The Schuttes' Claims allege that the Schuttes contacted Wilson about the offer and that Wilson informed the Schuttes that they needed an attorney to assist in the Property's sale negotiations, that Wilson was an attorney, and that he would be happy to manage the negotiations and provide legal work, even though he was not a licensed Idaho attorney. Ex. C, ¶ 17.

38.    The Schuttes' Claims allege that the Schuttes signed a Fee Agreement with Wilson and Wilson Tax Law which indicated that they were engaging Wilson and Wilson Tax Law for legal services. Ex. C, ¶ 20.

39.    Wilson Bowen was not a party to the Fee Agreement.

40.    According to the Schuttes' Claims, negotiations regarding the sale took place between February 19, 2021 and April 1, 2021. Ex. C, ¶ 22.

41.    The Schuttes' Claims do not assert any allegations indicating Wilson Bowen was involved in any fashion in the negotiation of the sale of the Property.

42.    The Schuttes' Claims further allege that during the negotiation period, Wilson stated that he was acting as a real estate agent as much as an attorney, that they would need a real estate agent to conclude the sale of the Property, and that Wilson could serve as a real estate agent for the Schuttes but that he would need to be compensated for those services in the form of a commission. Ex. C, ¶ 33-34.

43.    The Schuttes' Claims allege that the Fee Agreement was subsequently amended to indicate that Wilson and Wilson Tax Law were serving as both a real estate agent and attorney and to change the fee arrangement from an hourly rate to a commission based on the sale price of the Property. Ex. C, ¶ 36.

44.    The Schuttes' Claims allege that they accepted and signed the Bottles' written purchase offer on April 2, 2021, signed the final documents constituting the Sales Agreement on June 2, 2021, and that the Sales Agreement listed a closing date of December 1, 2021. Ex. A, ¶ 39, 40.

45.    According to the Schuttes' Claims, on or around September 3, 2021, the Schuttes terminated their legal and real estate relationship with Wilson and Wilson Tax Law related to the Property without paying him any fees.  Ex. C, ¶ 41

46.    The Schuttes allege that on October 27, 2021, Wilson filed a Lis Pendens and recorded it with Canyon County, Idaho, which was intended to restrict transfer of the title of the property so that Wilson could obtain a judgment for the fees he claimed he was owed and foreclose upon his lien. Ex. C, ¶ 42.

47.    The Schuttes allege that on November 12, 2021, Wilson also filed and recorded a Claim of Lien in Ada County, Idaho and Canyon County, Idaho for the purpose of restricting transfer and to obtain a judgment and collect the legal fees he claims he is owed. Ex. C, ¶ 43.

48.    The Schuttes' Claims assert five causes of action.

49.    Count 1 asserts a claim for Constructive Fraud and Count 3 asserts a claim for Fraud against the Defendants arising out of the same statements made to the Schuttes. Ex. C, ¶ 45-59.

50.    Counts 1 and 3 allege that all of the Defendants told the Schuttes that Wilson and Wilson Tax Law could practice law in the state of Idaho without a license, statements which were false. Ex. C, ¶ 46, 51, 71, 76.

51.    Counts 1 and 3 also allege that Wilson and Wilson Tax Law told the Schuttes that Wilson and Wilson Tax Law could act as a real estate agent for the Schuttes without a license, that they were entitled to a commission for those services, that $400,000 was a reasonable fee for legal

services, and that it was necessary for Wilson and Wilson Tax Law to be compensated as real estate agents, all of which were false. Ex. C, ¶ 47-51, 72-76

52.     Counts 1 and 3 also allege that Wilson included the name of a local Idaho counsel in the Fee Agreement to cover their improper conduct of practicing law in Idaho without a license. Ex. C, ¶ 53, 78.

53.     Counts 1 and 3 allege that the Schuttes relied on these false statements when they engaged Wilson and Wilson Tax Law to perform legal and real estate services, which resulted in damages to the Schuttes. Ex. C, ¶ 57, 84.

54.     Count 2 alleges that Defendants violated the Idaho Consumer Protection Act by using an accounting office to recommend clients for legal and real estate services for which Wilson and Wilson Tax Law were not licensed and by representing that Wilson and Wilson Tax Law could serve as the Schuttes' attorney and real estate agent in Idaho. Ex. C, ¶ 63.

55.     Count 4 asserts a claim for abuse of process against Wilson and Wilson Law Group alleging that Wilson and Wilson Law Group filed the Lis Pendens and Claim of Lien without any basis in law or fact to do so and for the purpose of coercing and harming the Schuttes by disrupting the closing of the sale of the Property. Ex. C, ¶ 86-91.

56.     Count 5 asserts a claim for nonconsensual lien against Wilson and Wilson Tax Law alleging that the Claim of Lien they filed is improper, groundless and constitutes a non-consensual lien prohibited by Idaho law.

57.     The Schuttes seek significant actual damages as well as punitive damages and attorneys' fees. Ex. A, ¶ 97, Prayer for Relief.

58.     The Bottles' Claims assert a single cause of action for abuse of process against Wilson, alleging that he filed the Complaint in the Underlying Action and the Lis Pendens without

any basis in law or fact to do so and for the purpose of preventing, delaying, or otherwise interfering with the closing of the Property. Ex. B, ¶ 70-76.

59.     The Bottles' Claims contain allegations consistent with those in the Schuttes' Claims regarding the Fee Agreement, the Schuttes' engagement of Wilson and Wilson Tax Law to provide legal and real estate services in connection with the sale of the Property, representations made by Wilson, and Wilson and Wilson Tax Law's improper practice of law and real estate services. *See* Ex. B.

60.     The Bottles seek damages in an amount no less than $50,000.00 plus attorneys' fees. Ex. B, Prayer for Relief.

**C.    The Insurance Dispute.**

61.     In February 2022, Defendants tendered the Bottles' Claims and the Schuttes' Claims (the Bottles' Claims and the Schuttes' Claims collectively referred to as the "Underlying Claims") to Hartford seeking a defense and indemnity under the Hartford Policy.

62.     On March 15, 2022, Hartford advised Defendants that it was denying coverage for the Underlying Claims.

63.     On March 30, 2022, Hartford issued a letter to Defendants in which it denied coverage for the Underlying Claims under the Hartford Policy on multiple grounds, refused to provide a defense to Defendants in the Underlying Action, and reserved its rights to deny coverage on various other grounds. See Denial letter, attached as **Exhibit E**.

64.     On June 23, 2022 counsel for Defendants sent a letter disagreeing with Hartford's coverage position and demanding that Hartford provide a defense and acknowledge coverage for the Underlying Claims, a true and correct copy of which is attached as **Exhibit F.**

**COMPLAINT-13**

**COUNT I**
**DECLARATORY RELIEF**
**No Coverage For Wilson Tax Law Under the Hartford Policy**
**Because it is Not An "Insured"**

65.     Hartford repeats and realleges the allegations of Paragraph 1 through 64 as if fully set forth herein.

66.     An actual controversy exists between Hartford and Wilson Tax Law regarding whether the Hartford Policy provides coverage for the Underlying Claims and whether Hartford owes a duty to defend and indemnify Wilson Tax Law for the Underlying Claims.

67.     The only potentially relevant coverage part of the Hartford Policy is the Professional Liability coverage part.

68.     Wilson Tax Law is not a "named insured" under the Hartford Policy, only "Wilson Bowen Tax Services, Inc." is.

69.     With respect to the Professional Liability coverage part, Wilson Tax Law is not an "insured entity" because it is neither a subsidiary of "Wilson Bowen Tax Services, Inc.," the "named insured," nor a "predecessor entity" of the "named insured."

70.     Because Wilson Tax Law is neither a "named insured" nor an "insured entity," it does not qualify as an "insured" under the Professional Liability coverage part of the Hartford Policy.  As such, the Hartford Policy does not provide coverage for Wilson Tax Law, and Hartford owes no duty to defend or duty to indemnify Wilson Tax Law in the Underlying Action or in connection with the Underlying Claims.

71.     Accordingly, Hartford seeks a declaration that it has no duty to defend or indemnify Wilson Tax Law for the Underlying Claims.

**COMPLAINT-14**

## COUNT II
## DECLARATORY RELIEF
**No Coverage for Wilson Under the Hartford Policy Because He is Not An "Insured"**

72.     Hartford repeats and realleges the allegations of Paragraph 1 through 71 as if fully set forth herein.

73.     An actual controversy exists between Hartford and Wilson regarding whether the Hartford Policy provides coverage for the Underlying Claims and whether Hartford owes a duty to defend and indemnify Wilson for the Underlying Claims.

74.     The only potentially relevant coverage part of the Hartford Policy is the Professional Liability coverage part.

75.     Wilson is not a "named insured" under the Hartford Policy.

76.     Wilson is also not an "insured person" under the Professional Liability coverage part.

77.     An "insured person" is a principal, partner, officer, director, or employee of an "insured entity" but only if such person is performing professional accounting services on behalf of the "insured entity" at the time of the "wrongful act," which is a negligent act, error or omission in the performance of "professional accounting services."

78.     The only entity that qualifies as an "insured entity" is the named insured "Wilson Bowen Tax Services, Inc."

79.     While it is Hartford's understanding that Wilson is a partner or employee of Wilson Bowen, he was not performing "professional accounting services" on behalf of Wilson Bowen at the time of the alleged "wrongful act."

80.     The Fee Agreement, as amended, between Wilson, Wilson Tax Law, and the Schuttes was for the performance of legal and real estate services.

**COMPLAINT-15**

81.     The improper or unauthorized services provided in connection with the sale of the Property were only legal and real estate services, according to the Underlying Claims.

82.     Counts 1 and 3 of the Schuttes' Claims for Constructive Fraud and Fraud and Count 2 for violation of the Idaho Consumer Protection Act arise out of Wilson's representation that he could perform legal and real estate services in Idaho and other statements regarding his request for compensation in connection with those services.

83.     Such claims do not allege Wilson or Wilson Bowen performed or failed to perform any "professional accounting services" in the ordinary course of the accounting profession.

84.     Counts 4 and 5 of the Schuttes' Claims and Count 1 of the Bottles' Claims relate to Wilson's actions, individually, once he was fired by the Schuttes and these intentional actions taken against his own clients have nothing to do with "professional accounting services" but instead were an effort to recover fees for his legal and real estate services.

85.     None of the actions of Wilson described above constitute a negligent act.

86.     Because none of the claims or damages against Wilson are for negligent acts in the performance of "professional accounting services," Wilson is not an "insured" under the Professional Liability coverage part of the Hartford Policy.

87.     Accordingly, Hartford seeks a declaration that it has no duty to defend or indemnify Wilson for the Underlying Claims.

### COUNT III
### DECLARATORY RELIEF
**No Coverage for Defendants Under the Hartford Policy Because
The Claims Do Not Satisfy the Insuring Agreement**

88.     Hartford repeats and realleges the allegations of Paragraph 1 through 87 as if fully set forth herein.

89.     An actual controversy exists between Hartford and the Defendants regarding

**COMPLAINT-16**

whether the Hartford Policy provides coverage for the Underlying Claims and whether Hartford owes a duty to defend and indemnify the Defendants for the Underlying Claims.

90.     The only potentially relevant coverage part of the Hartford Policy is the Professional Liability coverage part, which, subject to all other terms and conditions, only provides coverage for "claims," i.e., civil pleadings against "insureds" alleging negligent acts, errors or omissions in the performance of or failure to perform "professional accounting services" by the "insured" in the ordinary conduct of its profession.

91.     The Professional Liability coverage part also requires that the "damages" and "claims expenses" arise out of the negligent act, error, or omission in the performance of or failure to perform "professional accounting services" by an "insured" in the ordinary conduct of its profession.

92.     Here, none of the Underlying Claims assert "claims" related to negligent acts, errors or omissions in the performance of or failure to perform "professional accounting services."

93.     None of the Underlying Claims assert "damages" or "claims expenses" related to negligent acts, errors, or omissions in the performance of failure to perform "professional accounting services."

94.     The Fee Agreement, as amended, between Wilson, Wilson Tax Law and the Schuttes was for the performance of legal and real estate services.

95.     The improper or unauthorized services provided by Wilson and Wilson Tax Law in connection with the sale of the Property were only legal and real estate services, according to the Underlying Claims.

96.     Counts 1 and 3 of the Schuttes' Claims allege that the Defendants committed Constructive Fraud and Fraud by representing to the Schuttes that Wilson and Wilson Tax Law

**COMPLAINT-17**

could practice law in Idaho without a license and could act as a real estate agent in Idaho without a license.

97.     Neither the representations nor the recommendations constitute a "negligent" act, error or omission nor were they made in the performance of or failure to perform "professional accounting services."

98.     Count 2 of the Schuttes' Claims alleges that the Defendants violated the Idaho Consumer Protection Act by using an accounting office to recommend clients for legal and real estate services for which Wilson and Wilson Tax Law were not licensed, and by representing that Wilson and Wilson Tax Law could serve as the Schuttes' attorney and real estate agent.

99.     Again, none of the alleged wrongful conduct constitutes a "negligent" act, error or omission nor is it related to the performance of "professional accounting services."

100.    Counts 4 and 5 of the Schuttes' Claims  and Count 1 of the Bottles' Claims relate to Wilson's actions, individually, once he was fired by the Schuttes, and these intentional actions taken against his own clients have nothing to do with "professional accounting services" but instead are an effort to recover fees for his legal and real estate services.

101.    Furthermore, for the reasons discussed in paragraphs 65 through 87, Wilson and Wilson Tax Law are not "insureds" under the Professional Liability coverage part and, thus, the Underlying Claims which relate to actions and representations made by Wilson and Wilson Tax Law do not assert claims for "wrongful acts" committed by an "insured," which is necessary for coverage.

102.    The only allegations against Wilson Bowen, the accounting firm, and the only arguable "insured," are that it falsely represented that Wilson and Wilson Tax Law could provide legal and real estate services to the Schuttes without a license and used the accounting office to

COMPLAINT-18

recommend clients use Wilson and Wilson Tax Law for legal and real estate services.

103.    Wilson Bowen was not even a party to the Fee Agreement and is not alleged to have performed any services in connection with the sale of the Property, which is the transaction giving rise to the Underlying Claims.

104.    Simply put, Wilson Bowen is not alleged to have performed or failed to have performed "professional accounting services."

105.    None of the alleged actions of Wilson Bowen constitute a negligent act nor do they constitute "professional accounting services."

106.    Because the claims do not involve negligent acts, errors or omissions in the performance of or failure to perform "professional accounting services," none of the Underlying Claims satisfy the Insuring Agreement of the Professional Liability coverage part.

107.    Accordingly, Hartford seeks a declaration that it has no duty to defend or duty to indemnify any of the Defendants for the Underlying Claims.

<u>COUNT IV</u>
**DECLARATORY RELIEF**
**No Coverage for Defendants for Count 2 of the Schuttes' Claims under the Hartford Policy Because the Claims are Excluded by Exclusion 18**

108.    Hartford repeats and realleges the allegations of Paragraph 1 through 107 as if fully set forth herein.

109.    An actual controversy exists between Hartford and the Defendants regarding whether the Hartford Policy provides coverage for the Underlying Claims and whether The Hartford owes a duty to defend and indemnify the Defendants for the Underlying Claims.

110.    Exclusion 18 of the Professional Liability coverage part precludes coverage for "the actual or alleged violation of any state or federal antitrust, restraint of trade, unfair or deceptive business practices, unfair competition or other consumer protection laws."

**COMPLAINT-19**

111.    Count 2 of the Schuttes' Claims asserts that the Defendants violated the Idaho Consumer Protection Act and thus coverage for Count 2 is excluded by Exclusion 18.

112.    Hartford requests that this Court declare that Hartford has no duty to indemnify Defendants for any damages, liability, or costs associated with the conduct asserted in Count 2 of the Schuttes' Claims because coverage is excluded by Exclusion 18.

## COUNT V (In the Alternative)
### No Coverage for Defendants Under The Hartford Policy Because the Claims Are Excluded by Exclusion 6.

113.    Hartford repeats and realleges the allegations of Paragraph 1 through 112 as if fully set forth herein.

114.    An actual controversy exists between Hartford and the Defendants regarding whether the Hartford Policy provides coverage for the Underlying Claims and whether Hartford owes a duty to defend and indemnify the Defendants for the Underlying Claims.

115.    The only potentially relevant coverage part of the Hartford Policy is the Professional Liability coverage part.

116.    Exclusion 6 of the Professional Liability coverage part precludes coverage for "damages" or "claims expenses" for "claims" "based upon, arising from, or in any way related to an 'insured's' capacity as…an officer, director, partner, employee, principal shareholder, or member of any organization other than [the 'named insured']."

117.    In the event that the Court determines Wilson qualifies as an "insured" under the Hartford Policy, which he is not, Exclusion 6 bars coverage for the Underlying Claims against all Defendants.

118.    All of the Underlying Claims against Defendants arise out of and are related to Wilson's capacity as an officer, director, partner, employee, or principal shareholder of Wilson Tax Law, which is not the "named insured."

**COMPLAINT-20**

119.    Specifically, the Underlying Claims that are asserted against Wilson and Wilson Bowen are also asserted against Wilson Tax Law and allege services performed by Wilson as a shareholder of Wilson Tax Law.

120.    The fees which are allegedly improper are owed to Wilson Tax Law.

121.    The alleged actions and representations made about Wilson and Wilson Tax Law regarding their ability to practice law and real estate services in Idaho, which form the basis of the Schuttes' Claims for Constructive Fraud, Fraud, and Violation of the Idaho Consumer Protection Act, were allegedly made by Wilson in his capacity as an attorney for Wilson Tax Law.

122.    The counts for Abuse of Process and Non-Consensual Lien arise out of Wilson's conduct as an attorney at Wilson Tax Law.

123.    Accordingly, in the event the Court determines that Wilson qualifies as an "insured" under the Hartford Policy, Hartford pleads this count in the alternative and seeks a declaration that it has no duty to defend or duty to indemnify any of the Defendants for the Underlying Claims because they are excluded by Exclusion 6.

## COUNT VI (In the Alternative)
### DECLARATORY RELIEF
**No Coverage for Defendants Under the Hartford Policy Because the Claims Are Excluded by the Same Representation Exclusion**

124.    Hartford repeats and realleges the allegations of Paragraph 1 through 124 as if fully set forth herein.

125.    An actual controversy exists between Hartford and the Defendants regarding whether the Hartford Policy provides coverage for the Underlying Claims and whether Hartford owes a duty to defend and indemnify the Defendants for the Underlying Claims.

126.    Section III of the PROFESSIONAL SERVICES ENDORSEMENT – ACCOUNTANTS excludes coverage for, among other things, any "claim" "brought by any person

or entity which any 'insured' has sued or threatened to sue for fees relating to the same representation or subject matter which is the basis of a 'claim'…" (the "Same Representation Exclusion").

127.    In the event that the Court determines Wilson qualifies as an "insured" under the Hartford Policy, which he is not, the Same Representation Exclusion bars coverage for the Underlying Claims against all Defendants.

128.    The Underlying Action was originally filed by Wilson against the Bottles and the Schuttes to collect fees Wilson alleged he was owed in connection with the sale of the Property.

129.    The Bottles' Claims and Schuttes' Claims, for which Defendants seek coverage, arise out of the same representation and subject-matter—they relate to the legal and real estate services provided by Defendants in connection with the sale of the Property.

130.    Accordingly, in the event the Court determines that Wilson qualifies as an "insured" under the Hartford Policy, Hartford pleads this claim in the alternative and seeks a declaration that it has no duty to defend or duty to indemnify any of the Defendants for the Underlying Claims because they are excluded by the Same Representation Exclusion.

## **DEMAND FOR ATTORNEY FEES AND COSTS**

As referred to above, Hartford has been required to retain counsel for the purpose of prosecuting this action, and is entitled to recover all reasonable costs and attorneys' fees and costs incurred in the prosecution of this lawsuit potentially pursuant to various provisions of Idaho law, including, but not limited to, Idaho Code §§ 12-120(3), 12-121, 12-123, and Rule 54 of the Federal Rules of Civil Procedure, and any other applicable statute, rule, regulation, and/or contractual provision.  Plaintiffs are further entitled to an award of reasonable attorney fees and costs in the event of default.

**COMPLAINT-22**

**WHEREFORE**, Hartford respectfully requests this Court grant judgment awarding the following relief:

a.  That the Court declare that an actual controversy exists which lies within this Court's jurisdiction, and Hartford has no other adequate remedy at law;

b.  That the Court make a declaration concerning Hartford's rights, duties and obligations to Defendants, if any, under the terms, provisions, limits, conditions, exclusions, and endorsements of the Hartford Policy, and specifically that the Court declare that (i) Hartford does not owe a duty to defend any of the Defendants in connection with any of the Underlying Claims in the Underlying Action and (ii) Hartford has no duty to indemnify any of the Defendants for any settlement amounts or liability or damages assessed against any of the Defendants in the Underlying Action or for any attorneys' fees, costs, or other expenses incurred by the Defendants in connection with the Underlying Action;

c.  That Hartford be awarded its attorneys' fees and costs of suit incurred herein; and

d.  Such other and further relief as may be appropriate.

DATED:  August 25th, 2022.

**DUKE EVETT, PLLC**

By: Keely E. Duke
Keely E. Duke – Of the Firm
Molly E. Mitchell – Of the Firm

**BUSCH BLACKWELL, LLC**

Tyler J. Scott, pro hac pending
Scott L. Davis, pro hac pending
*Attorneys for Hartford Underwriters Insurance Company*

**COMPLAINT-23**

**COMPLAINT-24**